GEORGE M. COX, Inc., v. COMMISSIONER
OF INTERNAL REVENUE.
No. 10226.

Circuit Court of Appeals, Fifth Circuit.
June 30, 1942.

John E. Jackson, of New Orleans, La., for petitioner.

Arthur A. Armstrong, J. Louis Monarch, Sewall Key, and Helen R. Carloss, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Vernon F. Weekley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The case involves income tax deficiencies assessed Dec. 27, 1939, against George M. Cox, Incorporated, for a fiscal year ending Sept. 30, 1938. The taxpayer is a personal holding company owned principally by George M. Cox, its president, but in which his former wife, Thelma A. G. Cox, who was divorced in February, 1935, owned separately some shares of stock, and was claiming many more in 1938. The tax assessed is, to the extent of $52,614, one on undistributed profits under Revenue Act of 1936, particularly Section 351, as amended by Section 1 of the Revenue Act of 1937, 26 U.S.C.A. Int.Rev.Acts, page 938. The main question is what credit is to be allowed for "dividends paid during the taxable year" under Section 27(a), 26 U.S.C.A. Int.Rev.Acts, page 837. A secondary question is whether the president's salary of $10,000 as returned was wrongly reduced to $3,000 by the Commissioner.

As to the question of salary, Regulation 94, Art. 23(a) 6 makes the test of salary deductions "Whether they are reasonable and are in fact payments purely for services." This is a factual test. The Commissioner's determination that only $3,000 was allowable was affirmed by the Board of Tax Appeals because there was no sufficient evidence to overturn it. For the same reason we must affirm the Board. There is no evidence as to what services the president actually rendered or what they were reasonably worth. There are only inferences to be drawn from the size of the corporation's income and the legal difficulties the corporation was in. These inferences are complicated by the further facts that the taxpayer was really carrying on no business except receiving and distributing the dividends on stocks it owned, and the litigation was more between Cox and his former wife than with the corporation. The whole matter is one of fact. The Regulation above referred to mentions that if excessive payments as salary bear a close relationship to stockholdings, they may be treated as a dividend. No argument has been made here that the $7,000 disallowed as salary ought to be treated as a dividend paid.

As to the dividends which were paid as such, the important facts are in no substantial dispute. In 1932 the shares of taxpayer's capital stock were held: by Geo. M. Cox 316 shares, by Thelma A. Geortz (later Mrs. Cox) one share, by two other directors one share each. Of the 316 shares standing in the name of Cox, 158 were his separate property; the other 158 were the share of a former wife in the marital community; but after Cox married Thelma he bought them with community funds so that they became part of his second marital community. The second Mrs. Cox obtained a divorce decree in February, 1935, but the community was not finally settled and adjusted till a decree was rendered in the Supreme Court of Louisiana on May 29, 1939. In the 1938 tax year, Mrs. Cox had in her name, besides the one share she originally owned, 12 shares of the separate stock of Cox, which she had bought at public sale to satisfy delinquent alimony. These were undisputedly her separate property, and Cox undisputedly had left a certificate for only 146 shares as his separate property. Mrs. Cox was claiming also the certificate for 158 shares bought from the first Mrs. Cox as given to her by Cox, which he denied. Relations between them were very acrimonious. Mrs. Cox, being secretary and treasurer of the corporation, had taken from the corporation's office a large amount of securities and records, had set up a new office, and claiming to be the majority stockholder, she was attempting to sell the securities. In this atmosphere of contention a meeting of the board of directors was held July 29, 1938, all four directors being present. The meeting was stenographically reported. Mrs. Cox was refused recognition as majority stockholder. A resolution was passed that the corpora-

tion "does declare and authorize the payment forthwith of a dividend of $300 per share on all of the legally issued and lawfully authorized outstanding common capital stock of the corporation, to-wit:" each separate certificate number being set out with the number of shares and holder's name of each. These included Cox's certificate for 146 shares undisputedly his, certificates for 12 shares undisputedly belonging to Mrs. Cox, and other certificates for 158 shares in the name of Cox, but being the shares in dispute between him and Mrs. Cox. The resolution ended thus: "The President of this corporation be and he is authorized and directed for and on account of said corporation to pay said dividend forthwith." Mrs. Cox voted against the resolution, on the ground that Cox only owned 146 shares. Cox as president announced that the corporation's books showed Mrs. Cox indebted to the Company in excess of the amount of $3,-600, the dividend on her 12 shares, and that the Company would retain her dividend as compensation and set off for her indebtedness. Mrs. Cox made no objection to this, but entered a protest to other matters. The president promptly paid by check the dividend to the two other directors on their shares, but did not deliver a check to Mrs. Cox or himself. The income tax return balance sheet showed, we suppose as of date August, 1938, a balance due the corporation by Mrs. Cox on personal account of $3,605.94 and by Cox $20,948.82. It is a stipulated fact, however, that on July 29, 1938, Cox owed the corporation $80,181.46. In May, 1939, the Supreme Court of Louisiana fixed Mrs. Cox's true indebtedness at $27,182.37. Only after this decree were book entries about the dividends made, when the dividends both of Cox and Mrs. Cox were entered as absorbed by their respective indebtednesses, all as of date of July 29, 1938.

■■ The question therefore is, When were these dividends "paid"? The Commissioner says they were not paid till the book entries were made in May, 1939. The taxpayer says they were paid when declared in July, 1938, both by the statutes of Louisiana on compensation, and by the

actual intention and consent of the parties. Neither side contends that the mere declaration of a dividend is payment under this tax statute. The Board said: "The corporation was deliberately refraining from crediting any part of it until ownership of all shares was finally determined." It promulgated as a syllabus this principle: "A dividend declared but not paid or credited because of litigation as to the ownership of shares does not entitle the corporation to a credit under Section 27(a) of the Revenue Act of 1936." We give assent to this principle, but do not think it applies to all phases of this case. The Board well concluded the Commissioner was wrong in denying credit for the dividends paid the two outside directors. We think also the dividend of $3,600 specially declared to Mrs. Cox on the 12 shares she undisputedly owned was in the directors' meeting paid by offsetting it against her book indebtedness of $3,605.94. The president announced that application of it, and she acquiesced. It was paid then as fully as it has ever been since. The absence of a book entry does not defeat what was actually done. That the corporation was claiming, and finally established a further indebtedness does not prevent compensation occurring between the liquidated sum of $3,600 due as dividend and the admitted $3,605.94 due on the books. This dividend was "paid" in the taxable year.[1]

■ A further credit ought to be allowed due to the peculiar way in which this dividend was declared, separately on each particular stock certificate. The dividend thus specially declared on Cox's certificate for 146 shares, $43,800, was in no wise involved in the dispute over the ownership of the other shares. Mrs. Cox in the meeting submitted her list of stockholders in which she credited Cox with 148 instead of 146 shares. There was no possible corporate reason for not paying this dividend to Cox except that he owed the $20,948 on book account and $59,233 otherwise. In the corporation's tax return, it seems, he swore that it was always his intention to compensate the dividend with the debt. In his individual tax return for 1938 Cox reported and paid tax

[1] The doctrine of constructive receipt of dividends by the shareholder, and the corollary of constructive payment by the corporation, is discussed in Avery v. Commissioner, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216; Saenger, Inc., v. Commissioner, 5 Cir., 84 F.2d 23; and Sanford Corp. v. Commissioner, 3 Cir., 106 F.2d 882. That doctrine is not in question here, but rather receipt and payment by absorption in a larger debt due the corporation by the shareholder.

both on this dividend and that on what proved to be community shares. That is most convincing evidence of his real intention; and since he was acting both for the corporation and himself his intention is equal to an agreement. Also thereby the United States got the very result that the undistributed profits tax was mainly intended to produce, namely, taxation of stockholders. Again the delay of book entries ought not to control. The likelihood is that the Secretary-Treasurer and not the President had the books and these officers were not cooperating. By Regulation 94, Art. 27(a), "A dividend will be considered as paid when it is received by the stockholder." When the stockholder receives the full and final benefit of the dividend by offset, it is as much paid as if he had received and then paid back the money.

This conclusion is not rested on the peculiar law of Louisiana, but is aided by it, especially in explaining the actions of the parties. For compensation under that law is much more automatic and prompt than is set-off in other jurisdictions. Set-off requires some act or agreement to put it in effect; but not so compensation if the demands are liquidated and equally demandable, that is, due and payable. Louisiana Civil Code, Art. 2207 is: "When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed." Art. 2208: "Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums." Art. 2209: "Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable." So soon as the dividends we are speaking of came into being as debts presently demandable of the corporation, compensation took place between them and the debts due to the corporation, to their respective amounts, by operation of law. Persons living under this law would naturally give less attention to expressing or recording this result than would those living under a law of conventional set-off.

The dividends declared on the 158 shares whose ownership was in controversy stand otherwise, for though Cox was the master of the community, and for most purposes continued such till it was settled, he was under the circumstances a sort of trustee, and from the corporation's standpoint it would be desirable to withhold payment to him lest it turn out the shares were the separate property of Mrs. Cox and not part of the community. There was room for a deliberate corporate intent to withhold payment and there was a lack of complete mutuality and demandability between the debts which might well interfere with compensation under the Louisiana Code. The conclusions of the Board may stand as to this dividend.

We reverse the judgment of the Board for such further proceedings before it as are proper, consistent with this opinion.