**ROYAL MFG. CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 8200.

Circuit Court of Appeals, Third Circuit.
Argued Jan. 22, 1943.
Decided Dec. 30, 1943.

I. Herman Sher, of New York City (Thorpe Nesbit, of Philadelphia, Pa., and Hugh Satterlee, of New York City, on the brief), for petitioner.

Muriel S. Paul, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty. Gen., on.the brief), for respondent.

Before JONES, Circuit Judge, and WATSON and MEANEY, District Judges.

JONES, Circuit Judge.

The corporate petitioner in computing its surtax for the year 1936 on its undistributed profits, as defined by Sec. 14(a) of the Revenue Act of 1936,[1] took credit in the sum of $50,000 for a dividend allegedly paid within the meaning of Sec. 27 (a) of the same Revenue Act.[2] The Commissioner disallowed the credit and determined a deficiency. The matter is now here on the taxpayer's petition for a review of the decision of the Board of Tax Appeals which sustained the action of the Commissioner.

The attending circumstances and the action taken by the taxpayer in respect of the dividend for which it claims a credit are as follows:

In 1936 the taxpayer had capital stock, issued and outstanding, consisting of prior preferred, preferred and common shares. Under the terms of issuance of the prior preferred and the preferred, no dividends were payable on the common stock unless and until all dividends due on both preferred issues were paid and, so long as any prior preferred stock remained outstanding in a name other than that of the taxpayer,

---

[1] Sec. 14 (a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 823, so far as presently material, provides:

"§ 14. Surtax on Undistributed Profits

"(a) Definitions. As used in this title

— — —

"* * * * * * * * * * * * *

"(2) The term 'undistributed net income' means the adjusted net income minus the sum of the dividends paid credit provided in section 27 and the credit provided in section 26 (c), relating to contracts restricting dividends."

[2] Sec. 27 (a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 837, provides:

"§ 27. Corporation Credit for Dividends Paid

"(a) Dividends Paid Credit in General. For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year."

no cash dividends could be declared or paid upon the common stock in excess of 25% of the net earnings of the company.

By written agreement of December 2, 1936, signed by all of the stockholders of the company, it was provided that in respect of any and all dividends up to but not exceeding $50,000, which might thereafter, but before January 15, 1937, be declared and paid by the taxpayer upon its common stock, the holders of the preferred stocks would waive and relinquish the above mentioned restrictions with respect to the declaration and payment of cash dividends upon the common stock.

The agreement also provided that,—

"(4) Each and Every of the undersigned who is a holder of common stock of the Royal Manufacturing Company hereby promises and agrees that if Royal Manufacturing Company declare and pay a dividend upon said common stock on or before January 15, 1937, that he in consideration of such mutual promises of the stockholders and of such declaration and payment will turn over, give and donate all dividends upon said common stock received by him prior to said date to said corporation, less only such amounts as he shall be compelled to pay as Federal or State income taxes by reason of the receipt of such dividends."

"Each stockholder hereby authorizes Royal Manufacturing Company to endorse in his name any and all checks for dividends upon common shares declared and made payable on or before January 15, 1937 and to redeposit the same in the bank accounts of Royal Manufacturing Company, and agrees that he shall and will report in his Federal and State income tax reports the receipt thereof, and does hereby constitute and appoint Royal Manufacturing Company as agent to receive the same on his behalf. In case Royal Manufacturing Company as agent for a stockholder endorses and redeposits in its own account any such dividend check, it shall upon demand of the stockholder, reimburse him for any Federal or State income taxes paid by the stockholder by reason of the receipt of such dividends."

Shortly thereafter, viz., on December 21, 1936, the taxpayer declared a dividend on its common stock in the aggregate sum of $50,000, which was to be payable in cash to the eleven common stockholders of the company of record on that day (December 21, 1936) and was to be paid on or before December 28, 1936. It was on December 29, 1936, however, that the taxpayer drew eleven checks on a New York bank payable respectively to the order of each of the eleven holders of the company's outstanding common stock of record on December 21, 1936. The words "Dividend Common Stock" appeared on each of the checks. After drawing the dividend checks the taxpayer on the same day (December 29, 1936), as agent for the common stockholders, under authority conferred by the agreement of December 2, 1936, endorsed each of the eleven checks in the names of the respective payees and deposited them to its own credit with the New York bank which accepted them and credited the taxpayer's account with $50,000. The taxpayer reflected the transaction on its books on December 29, 1936, by charging to its surplus account and crediting to its cash account the amount of the above mentioned checks as dividends paid. It also debited its cash account and credited its surplus account with $50,000 as cash contributed by its common stockholders.

Each of the common stockholders reported the amount of the respective dividend check issued in his or her name as income received in 1936 and paid income taxes thereon accordingly.

While the taxpayer had sufficient earned surplus between December 21 and December 31, 1936, to warrant the declaration of a $50,000 dividend, it was not in a cash position during the period indicated to make a distribution of such an amount in cash. According to its bank statement of December 28, 1936, the day before the "dividend checks" were drawn, the taxpayer had a credit balance of $19,864.72; on December 29, 1936, the day the checks were drawn, endorsed and deposited, $45,115.08; and on December 30, 1936, the day after the dividend check transaction, $43,586.47.

The relevant statute specifies that the dividends paid credit shall be the amount of dividends *paid* by a corporation during a taxable year. This means nothing less than that the control of property distributed by way of a dividend must have passed absolutely and irrevocably from the distributing corporation to its stockholders. The provisions of the statute have been competently, and we believe, correctly so construed for administrative purposes. See Art. 27 of Treasury Regulations 94,

promulgated under the Revenue Act of 1936.

In Schinebro, Inc., v. Commissioner, 2 Cir., 131 F.2d 504, 505, a taxpayer declared a dividend to be paid partly in cash and partly in stock in another company. The cash portion of the dividend was paid but the stock was not distributed because it was in the hands of stock brokers as collateral security. The court approved the Commissioner's disallowance of a dividends paid credit under Sec. 27 of the Revenue Act of 1936 to the extent of the stock portion for the reason that the corporation continued to use the stock for its own benefit as the pledgor thereof with the stock brokers. The court held that the stock had never been made available to the stockholders, and, therefore, that the prerequisite to a dividends paid credit was not present. The Court of Appeals for the Fifth Circuit held to like effect with respect to a dividend in stock which was not distributed because of a controversy concerning the ownership of the stock upon which the dividend was payable. George M. Cox, Inc., v. Commissioner, 128 F.2d 957, 960.

■ Not only was the dividend fund in the instant case never out of the control of the taxpayer but it was at all times the taxpayer's (as well as the stockholders') intention that the fund represented by the dividend should remain within the taxpayer's control and dominion for its own uses and purposes. There was not present an intention on the part of the taxpayer to distribute a dividend unreservedly. Such an intention has been held to be an important factor in determining whether a dividend has been paid. Palmer v. Commissioner, 302 U.S. 63, 70, 73, 58 S.Ct. 67, 82 L.Ed. 50; Pacific Grape Products Company v. Commissioner, 42 B.T.A. 914, 919. Here, before any action was ever taken looking to the declaration of a dividend on the common stock, the taxpayer was in possession of an agreement whereby the stockholders had agreed to "contribute" to the taxpayer all of the "dividends" up to $50,000 that might be declared upon the common stock within a specified period. And, to insure that that would be done, the taxpayer had authority, in advance of dividend action, to endorse and then use for its own account any dividend checks drawn within the specified period to the order of the common stockholders. The inescapable conclusion from these facts is that it was never intended that the taxpayer should part with the use of its funds through an outright dividend distribution to the holders of its common stock.

The taxpayer urges upon us that the stockholders did not have to pay back the dividend to the corporation; that under domiciliary (New Jersey) law the declaration of a dividend payable to stockholders of record on a certain date immediately creates a debt from the corporation to the stockholders; and that a corporation cannot rescind a dividend once declared. None of these matters relates to what the taxpayer intended to do or what it actually accomplished and, under the circumstances shown, has little bearing on the question as to what constitutes the payment of a dividend within the meaning of the Revenue Act. The taxpayer passes over the intent and effect of the agreement under which both it and its stockholders acted in respect of the dividend and whereby the "liability of the corporation on the dividend checks was extinguished before it arose and accrued."

■ The right of a taxpayer to minimize, or even avoid, a liability for income taxes by means which the law allows, may be conceded (Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355), but the question here involved is whether what was done meets the requirements of the statute. In considering the power conferred by the Sixteenth Amendment and the revenue laws enacted thereunder, matters of substance are to be regarded and not mere form. Weiss v. Stearn, 265 U.S. 242, 254, 44 S. Ct. 490, 68 L.Ed. 1001, 33 A.L.R. 520. In the instant case the form followed by the taxpayer was uncoupled with any reality so far as an unrestricted transfer of property from the taxpayer to the common stockholders by way of a dividend was concerned. The transaction from its inception was nothing more than an attempt to simulate by book entries the basis for a tax credit although the passing of control of the dividend fund from the company to the stockholders was neither intended nor effected.

The taxpayer also stresses the fact that the common stockholders individually reported the dividends as income received by them and argues that that fact establishes payment of a dividend within the meaning of Sec. 27 (a). Ordinarily a recipient's acknowledgment of a distribution has its

bearing upon a question as to whether there has been a consummated transfer of control, but, in the light of the prior agreement in this case and what the taxpayer did with the dividend checks pursuant thereto, the action of the individual stockholders in reporting the dividend as income to them is ineffectual to establish that the dividend was a dividend *paid* as contemplated by the Act. Cf. Valley Lumber Company of Lodi v. Commissioner, 43 B.T.A. 423, 425.

The cases which the petitioner cites,[3] where a dividend-paid credit has been allowed, are readily distinguishable. Each of them involved a situation where the stockholders had the right to withdraw the dividend and the distributing corporation released all control thereover and intended so to do.

The decision of the Board of Tax Appeals is affirmed.

---

[3] Valley Tractor & Equipment Co. v. Commissioner, 42 B.T.A. 311; Todd-Witte Dry Goods Co., Inc., v. Commissioner, decided Oct. 14, 1940, 42 B.T.A. 1480, memorandum opinion; R. H. Bouligny, Incorporated, v. Commissioner, 45 B.T.A. 456; Hunter Baltimore Rye Distillery, Inc., v. Commissioner, decided July 9, 1942, 47 B.T.A. 1043, memorandum opinion; Parks-Chambers Inc., v. Commissioner, 5 Cir., 131 F.2d 65; George M. Cox, Inc., v. Commissioner, supra; Schinebro, Inc., v. Commissioner, supra.